UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

BRETT ERASMUS,

                              Plaintiff,

                 -v-

DEUTSCHE BANK AMERICAS HOLDING CORP., et al.,

                            Defendants.

------------------------------------------------------------------ X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/30/15
```

15 Civ. 1398 (PAE)

<u>OPINION & ORDER</u>

**PAUL A. ENGELMAYER, District Judge:**

       Plaintiff Brett Erasmus brings this employment discrimination suit against his former employer, Deutsche Bank AG, New York Branch ("Deutsche Bank"),[1] and his former supervisor at Deutsche Bank, Michael Fehrman (together, "defendants"). Erasmus alleges that he was subjected to a hostile work environment and discrimination during his employment, and was ultimately terminated in retaliation for his complaints about such conditions, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code § 8-101 *et seq.*

       Defendants now move to dismiss the Amended Complaint. For the reasons set forth below, the Court: (a) narrows but does not dismiss Erasmus's retaliation claims against Deutsche Bank and Fehrman; and (b) dismisses all other claims.

---

[1] Deutsche Bank was incorrectly named in the original Complaint as Deutsche Bank Americas Holding Corp. Dkt. 12, ¶ 10.

I.      **Background**[2]

    A.      **Factual Background**

Between April 4, 2005 and December 17, 2014, Erasmus, a heterosexual male, worked at Deutsche Bank in New York.  Am. Compl. ¶¶ 9, 13–14, 48.  Fehrman, also a Deutsche Bank employee, had supervisory authority over Erasmus.  *Id.* ¶¶ 12–13.

Erasmus alleges that, from the start of his employment in Deutsche Bank's Accounting Policy and Advisory Group ("APAG"), he "obtained stellar performance reviews for his productivity and professionalism."  *Id.* ¶¶ 14–15.  However, beginning around 2010, Erasmus's co-worker (the "Co-worker"), a homosexual male who is not a party to this action or named in the pleadings, began making "sexual gestures and advances" toward Erasmus in the workplace—behavior that "continu[ed] and escalat[ed]" over time.  *Id.* ¶¶ 16, 18, 25.  The Co-worker's conduct included "leer[ing] at [Erasmus] in a sexual manner" and commenting to Erasmus that the Co-worker was "having so much sex all the time."  *Id.* ¶¶ 19, 21 (emphasis omitted).  On a separate occasion, the Co-worker, in the presence of Erasmus and another employee, stated, "To get into a nightclub just put a sock in your pants and pretend like you have a really big dick and then when the bouncer sees it you are guaranteed to get in to the club."  *Id.* ¶ 23 (emphasis omitted).  The Co-worker thereafter motioned to Erasmus while "pointing to his penis."  *Id.* ¶ 24.

Erasmus alleges that he "rejected these sexual advances" and, "[i]n retaliation, [the] Co-worker made [Erasmus's] work experience unbearable and hostile."  *Id.* ¶¶ 25–26.  Erasmus claims that the "Co-worker defamed [Erasmus's] good name and professional reputation" and

---

[2] These facts are drawn from Erasmus's Amended Complaint.  Dkt. 12 ("Am. Compl.").  For the purpose of resolving this motion to dismiss, the Court assumes all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, the Court cannot rely on "factual allegations contained in legal briefs or memoranda."  *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000).

"tortuously [sic] interfered with [Erasmus's] prospective business relationships and dealings"; that Fehrman gave Erasmus negative performance reviews for "not [being] a team player"; and that Erasmus's "salary and bonuses began to diminish." *Id.* ¶¶ 27–30.

The Co-worker's alleged "sexual harassment . . . continued in 2014." *Id.* ¶ 33. Specifically, Erasmus claims, the Co-worker, on several occasions, "pretended to hold his penis while pointing it at [Erasmus]," and "made inappropriate sexual comments to [Erasmus]." *Id.* ¶¶ 34–35. On July 30, 2014, Erasmus complained to Fehrman about the Co-worker's conduct. *Id.* ¶ 37. Fehrman then began "imposing unattainable goals" on Erasmus, "withh[olding] [Erasmus's] participation in department activities," and "ignoring [Erasmus's] request for updates on assignments." *Id.* ¶¶ 38–39, 41.

On or about August 5, 2014, Erasmus filed claims with the U.S. Equal Employment Opportunity Commission ("EEOC").[3] *Id.* ¶ 4. In or around October 2014, Erasmus "sought therapy to deal with the stress created by defendants." *Id.* ¶ 42 (emphasis omitted). On November 12, 2014, Erasmus and defendants engaged in a mediation at the EEOC. *Id.* ¶ 43. On November 26, 2014, Fehrman "demanded" that Erasmus sign an "impromptu performance review without warning." *Id.* ¶ 44. In late November 2014, defendants moved the Co-worker to an office next to Erasmus's cubicle,[4] causing Erasmus "mental anguish and abuse." *Id.* ¶¶ 45– 46. On or about December 2, 2014, Erasmus filed a second complaint against defendants with

---

[3] The precise nature and scope of these EEOC claims is not clear from the Amended Complaint. Erasmus has neither attached copies of any EEOC filings nor described their content.

[4] The Amended Complaint does not indicate whether the Co-worker and Erasmus had previously been situated next to one another at Deutsche Bank.

the EEOC.[5]  *Id.* ¶ 5.  On December 15, 2014, at an APAG group meeting, Erasmus told Fehrman

that he was involved in an "external/internal investigation involving" Deutsche Bank and

Fehrman.  *Id.* ¶ 47.  Two days later, defendants terminated Erasmus.  *Id.* ¶ 48.

### B.    Procedural History

On or about November 27, 2014, Erasmus received a right-to-sue notice from the EEOC.

*Id.* ¶ 7.  On February 25, 2015, Erasmus filed the original Complaint with this Court.  Dkt. 1.  On

May 8, 2015, defendants moved to dismiss.  Dkt. 6.

On May 29, 2015, Erasmus filed an Amended Complaint, bringing 10 causes of action.

Am. Compl.  Respectively, Erasmus claims that:

> (1) Deutsche Bank violated Title VII by retaliating against Erasmus;
> (2) Deutsche Bank violated Title VII by "allowing sexual harassment and causing a hostile work environment";
> (3) Defendants violated New York State Executive Law ("N.Y. Exec. Law") § 296(7) by retaliating against Erasmus;
> (4) Defendants violated N.Y. Exec. Law § 296(6) by "aiding and abetting, inciting, compelling and coercing the discriminatory conduct";
> (5) Defendants violated N.Y. Exec. Law § 296 by "discriminating against [Erasmus] through sexual harassment and hostile work environment";
> (6) Defendants violated New York City Administrative Code ("N.Y. City Admin. Code") § 8-107(7)[6] by retaliating against Erasmus;
> (7) Defendants violated N.Y. City Admin. Code § 8-107(6) by "aiding, abetting, inciting, compelling and coercing . . . discriminatory, unlawful and retaliatory conduct";
> (8) Defendants are liable under N.Y. City Admin. Code § 8-107(13) for discriminatory practices based upon the conduct of employees or agents;
> (9) Defendants violated N.Y. City Admin. Code § 8-107(19) by interfering with Erasmus's protected rights under the NYCHRL; and
> (10) Defendants violated N.Y. City Admin. Code § 8-107(1)(a) by "creating and maintaining discriminatory working conditions, and otherwise discriminating against [Erasmus] because of sexual harassment and hostile work environment."

---

[5] Like the August 5, 2014 EEOC complaint, this complaint is neither attached to nor elucidated in Erasmus's pleadings.

[6] The Amended Complaint incorrectly states that this provision is N.Y. City Admin Code § 8-107(1)(e).

*Id.* ¶¶ 59–91.

On June 26, 2015, defendants moved to dismiss the Amended Complaint, Dkt. 17, and submitted a brief in support, Dkt. 18 ("Def. Br."). On July 17, 2015, Erasmus filed a brief in opposition. Dkt. 19 ("Pl. Br."). On July 31, 2015, defendants replied. Dkt. 20 ("Def. Reply Br.").

## II.    Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

In considering a motion to dismiss, a court must accept as true all factual allegations in the complaint, and draw all inferences in the plaintiff's favor. *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006); *see also Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[R]ather, the complaint's *factual* allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citing *Twombly*, 550 U.S. at 555, 570) (internal quotation marks omitted) (emphasis in *Arista Records*).

5

To survive a motion to dismiss in the employment discrimination context, a complaint need not "contain specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Twombly*, 550 U.S. at 569 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)).  Nevertheless, the elements of a prima facie case "provide an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible." *Sommersett v. City of New York*, No. 09 Civ. 5916 (LTS), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011).

## III.    Discussion

### A.    Defining Erasmus's Claims

At the outset, it is useful to define, as best as possible, the various federal and state law claims that Erasmus brings against Deutsche Bank and Fehrman.  They cluster into the five following categories:

*Hostile work environment*:  Erasmus claims that he was subjected to a hostile work environment as a result of the Co-worker's harassing conduct.  He brings hostile work environment claims under Title VII against Deutsche Bank, *see* Am. Compl. ¶¶ 62–64, and under the NYSHRL and the NYCHRL against Deutsche Bank and Fehrman, *see id.* ¶¶ 71–74, 88–91.

*Discrimination*:  The Court construes Erasmus's fifth and tenth causes of action as claiming some form of discrimination (apart from sexual harassment) in violation of the NYSHRL and the NYCHRL.[7]  Erasmus does not clearly identify the type of discrimination at issue.

---

[7] *See* Am. Compl. ¶¶ 71–74 ("Defendants . . . discriminat[ed] against [Erasmus] through sexual harassment and hostile work environment.") (emphasis omitted); *id.* ¶¶ 88–91 ("Defendants . . . creat[ed] and maintain[ed] discriminatory working conditions, and otherwise discriminat[ed]

*Retaliation*:  Erasmus claims that he was retaliated against for engaging in unspecified protected activity.  The first cause of action alleges retaliation by Deutsche Bank in violation of Title VII, *see id.* ¶¶ 59–61, and the third and sixth allege retaliation by both defendants in violation of the NYSHRL, *see id.* ¶¶ 65–67, and the NYCHRL, *see id.* ¶¶ 75–77, respectively.

*NYCHRL § 8-107*:  The ninth cause of action appears to claim coercion or interference with Erasmus's protected rights in violation of NYCHRL § 8-107.  *See id.* ¶¶ 84–87.

*Secondary theories of liability*:  The fourth and seventh causes of action broadly assert aiding and abetting liability on the part of Deutsche Bank and Fehrman for a number of the violations listed above.[8]  The eighth cause of action makes a claim against Deutsche Bank[9] for

---

against [Erasmus] because of sexual harassment and hostile work environment.") (emphasis omitted).  In the same two causes of action, Erasmus broadly asserts claims of illegal conduct in violation of the NYSHRL and NYCHRL, without specifying the statutory bases for relief.  *See id.* ¶ 74 ("Plaintiff hereby makes a claim against defendants under all of the applicable paragraphs of [New York State] Executive Law Section 296.") (emphasis omitted); *id.* ¶ 91 ("Plaintiff hereby makes a claim against defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.") (emphasis omitted).  The Court declines to comb these statutes *sua sponte* to elucidate the bases, if any, for these claims; the Court's role is not to "perform the yeoman's task of doing what counsel was obligated to do in the first place." *Kalderon v. Finkelstein*, 495 F. App'x 103, 106 (2d Cir. 2012) (summary order); *see also Paladines v. Poulos*, No. 93 Civ. 9031 (LMM), 1994 WL 389022, at *1 n.1 (S.D.N.Y. July 22, 1994) ("To the extent that the Court has not been informed of the specific provisions upon which the Complaint relies, the burden of ambiguity is necessarily borne by Plaintiff.").

[8] *See* Am. Compl. ¶¶ 68–70 (claiming NYSHRL liability for "aiding and abetting, inciting, compelling and coercing the discriminatory conduct"); *id* ¶¶ 78–80 (claiming NYCHRL liability for "aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct").

[9] Although the eighth cause of action names both defendants, *see* Am. Compl. ¶ 83, NYCHRL § 8-107(13) only provides for *employer* liability for discriminatory conduct by an employee, agent or independent contractor.  This theory of liability does not extend to employees, such as Fehrman.

supervisory liability based on violations of NYCHRL § 8-107(13) by its employees or agents.
*See id.* ¶¶ 81–83.

Defendants move to dismiss all claims.  The Court considers first Erasmus's hostile work

environment claims, then his discrimination claims, then his retaliation claims, and finally his

NYCHRL claim of interference with protected rights, addressing Erasmus's secondary liability

claims, if relevant, in the course of each discussion.  Where a Title VII claim has been made

within one of these clusters, the Court considers it first, before addressing corresponding claims

under the NYSHRL and NYCHRL.  As reviewed further *infra*, the relevant standards for liability

under Title VII and the NYSHRL are the same, *see Rojas v. Roman Catholic Diocese of

Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011), while the NYCHRL standard is generally more

permissive than the federal and NYSHRL standards, *see, e.g.*, *Mihalik v. Credit Agricole

Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).[10]  Additionally, the NYSHRL and the

NYCHRL share certain liability provisions not applicable to Title VII.

### B.     Hostile Work Environment Claims

#### 1.     Title VII

Erasmus brings a Title VII claim against Deutsche Bank, alleging that he was subjected

to a hostile work environment as a result of the Co-worker's harassing behavior.  *See* Am.

---

[10] NYCHRL claims "must be reviewed independently from and 'more liberally' than their
federal and state counterparts."  *Loejjler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir.
2009) (quoting *Williams v. N.Y.C. Hous. Auth*., 872 N.Y.S.2d 27, 31 (1st Dep't 2009)); *see also
Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 257 (E.D.N.Y. 2012) ("The provisions of
this [] title shall be construed liberally for the accomplishment of the uniquely broad and
remedial purposes thereof, regardless of whether federal or New York State civil and human
rights laws, including those laws with provisions comparably-worded to provisions of this title,
have been so construed." (citation omitted)); *Albunio v. City of New York*, 16 N.Y.3d 472, 478–
79 (2011) (the NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the
extent that such a construction is reasonably possible").

Compl. ¶¶ 62–64.  "Title VII prohibits the creation of a hostile work environment."  *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2441 (2013).  A hostile work environment claim under Title VII requires a showing:

> [1] that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and [2] that a specific basis exists for imputing the objectionable conduct to the employer.  *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (internal citations and quotation marks omitted).  The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered.  *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 188 (2d Cir. 2001) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)); *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).  This test has objective and subjective elements: the misconduct shown must be "severe or pervasive enough to create an objectively hostile or abusive work environment," and the victim must also subjectively perceive that environment to be abusive.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

*Alfano v. Costello*, 294 F.3d 365, 373–74 (2d Cir. 2002); *see also Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007).  In analyzing a hostile work environment claim, the Court must "assess the totality of the circumstances, considering a variety of factors, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (internal quotation marks and citation omitted).  "[P]sychological harm, like any other relevant factor, may be taken into account, [but] no single factor is required."  *Harris*, 510 U.S. at 23.

Significantly, Title VII "does not set forth a general civility code for the American workplace."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).  "[A] plaintiff alleging a hostile work environment must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working

environment." *Alfano*, 294 F.3d at 374 (internal quotation marks omitted). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* (internal quotation marks omitted).

Here, the Court cannot identify "facts sufficient to support the conclusion that [Erasmus] was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse.'" *Patane*, 508 F.3d at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)) (alteration in original). Erasmus has failed to plausibly allege either the severity or pervasiveness of conduct necessary to state a hostile work environment claim under Title VII.

To be sure, the Amended Complaint describes specific incidents between 2010 and 2014, in which the Co-worker made suggestive or offensive remarks or gestures directed at Erasmus or in his presence. *See* Am. Compl. ¶¶ 21–24, 34–35. But these acts, while crude, do not rise to the level of creating a hostile work environment under Title VII, even considering "all the circumstances," *Harris*, 510 U.S. at 23, including Erasmus's decision to seek therapy. *See Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir. 1997) ("Conduct that is merely offensive and not severe or pervasive enough to create an objectively hostile or abusive work environment . . . is beyond Title VII's purview." (internal quotation marks and citation omitted)). Notably, courts in this Circuit have found similar and even substantially more serious conduct to fall short of creating a hostile work environment. *See, e.g.*, *Marshall v. N.Y.C. Bd. of Elections*, 322 F. App'x 17, 18 (2d Cir. 2009) (summary order) (finding no hostile work environment where homosexual supervisor showed plaintiff a "sexual device he had purchased for his partner," even though plaintiff "may have been legitimately offended" by such talk); *Dayes v. Pace Univ.*, No. 98 Civ. 3675 (WHP), 2000 WL 307382, at *4–5 (S.D.N.Y. Mar. 24, 2000), *aff'd*, 2 F. App'x 204 (2d

10

Cir. 2001) (granting summary judgment to defendant where plaintiff was subject to six sexual comments, multiple requests for dates, was screamed at by supervisor, and was touched on the back); *Murray v. Visiting Nurse Servs.*, 528 F. Supp. 2d 257, 278–80 (S.D.N.Y. 2007) (male-to-male statements in the workplace such as "you're such a bitch," "good morning ladies," "when are you going to come out of the closet," and "are you ladies going to the parade?" insufficient to defeat summary judgment on hostile work environment claim); *Lucas v. S. Nassau Cmtys. Hosp.*, 54 F. Supp. 2d 141, 147–49 (E.D.N.Y. 1998) (denying hostile work environment claim where supervisor touched plaintiff multiple times, asked about the color of plaintiff's underwear, said plaintiff wanted to "go to bed" with her, and said "fuck you" to plaintiff on two occasions).

Further, while Erasmus alleges that some acts (*e.g.*, "leer[ing]," simulated genitalia-holding, and "ma[king] inappropriate sexual comments") occurred "numerous" or "several" times, *see* Am. Compl. ¶¶ 19, 34–35, this level of frequency is not "sufficiently continuous and concerted . . . to be deemed pervasive," or to make "the workplace . . . so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [Erasmus's] employment were thereby altered." *Alfano*, 294 F.3d at 373, 374.

The Amended Complaint also makes various conclusory allegations as to the severity and pervasiveness of the Co-worker's behavior, including that his "sexual advances" were "continuing and escalating," Am. Compl. ¶ 25, and that his "sexual harassment . . . continued in 2014," *id.* ¶ 33. But these statements do not avail Erasmus, because they lack sufficient factual specificity as to severity or pervasiveness to "nudge[]" Erasmus's claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Similarly, the Amended Complaint makes general claims of retaliatory actions by the Co-worker after Erasmus spurned his advances, including "defam[ing] [Erasmus's] good name and professional reputation" and "tortuously [sic]

interfer[ing] with [Erasmus's] prospective business relationships and dealings."  Am. Compl. ¶¶ 25–28.  These allegations, too, are conclusory and unspecific.  The Amended Complaint, therefore, fails to plausibly plead severity or pervasiveness, as necessary to state a claim under Title VII.[11]

Erasmus's claim of a hostile work environment is independently deficient because the Amended Complaint fails to adequately allege that the Co-worker's conduct is imputable to Deutsche Bank.  For an employer to be held liable for a hostile work environment, the plaintiff must demonstrate that "a supervisor used his or her authority to further the creation of a discriminatorily abusive working environment, or that the employer knew or reasonably should have known about harassment by non-supervisory co-workers, yet failed to take appropriate remedial action."  *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 153 (2d Cir. 2014) (internal quotation marks and citation omitted).  "Evidence that an employer did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed would be relevant."  *Vance*, 133 S. Ct. at 2453.

Here, the Amended Complaint does not allege that Deutsche Bank knew about the Co-worker's alleged harassment before Erasmus's July 30, 2014 complaint to Fehrman, *see* Am. Compl. ¶ 37, or that the Co-worker engaged in further offending behavior after that date.[12]  It

---

[11] *Doe v. City of New York*, 583 F. Supp. 2d 444 (S.D.N.Y. 2008), is not to the contrary. Erasmus cites *Doe*'s observation that "[t]he severity and pervasiveness of [the defendant's] conduct is a factual question that is inappropriate to decide on a motion to dismiss."  Pl. Br. 9 (quoting *Doe*, 583 F. Supp. 2d at 450).  But that statement reflected the weight of the particular evidence in *Doe*, not, as Erasmus urges, a broader proposition that hostile work environment claims, where deficient, cannot be dismissed based on the pleadings.

[12] Erasmus does allege that, after his July 30, 2014 complaint, defendants took actions such as "imposing unattainable goals" on him and placing the Co-worker next to his cubicle.  *See* Am.

thus fails to allege that Deutsche Bank furthered a hostile work environment, or was even aware of it while it was ongoing.  The Amended Complaint also lacks concrete allegations to the effect that Deutsche Bank failed to monitor the workplace for harassment, lacked a system for registering complaints, or discouraged employee complaints.  For this reason, too, then, Erasmus's Title VII hostile work environment claim against Deutsche Bank must be dismissed.[13]

### 2.     NYSHRL and NYCHRL

#### i.     Deutsche Bank

Erasmus also brings a hostile work environment claim against Deutsche Bank, both directly and as an aider and abettor, under the NYSHRL and the NYCHRL.  *See* Am. Compl. ¶¶ 68–74, 78–80, 88–91.  The NYSHRL and the NYCHRL each make it unlawful for an employer "to discriminate against [an] individual in compensation or in terms, conditions or privileges of employment" based on that individual's protected characteristic.  N.Y. Exec. Law § 296(1)(a); N.Y. City Admin. Code § 8-107(1)(a).  In the employment discrimination context, these human rights laws utilize an analysis that "parallels the analysis used in Title VII claims," meaning that the elements of a Title VII claim govern claims under the NYSHRL and NYCHRL, as well. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000).

Because "claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII," *Rojas*, 660 F.3d at 107 n.10 (citing *Torres*, 116 F.3d

---

Compl. ¶¶ 38, 45.  These allegations are relevant to Erasmus's retaliation claim.  But absent factual allegations of continuous or more severe harassment after that date, the Amended Complaint fails to allege that defendants enabled, or failed to address, hostile working conditions.

[13] In light of this holding, the Court has no occasion to reach defendants' separate arguments that Erasmus has failed to show that any hostile work environment arose *because of* his protected class, and that Erasmus's hostile work environment claims, to the extent they rely on incidents in 2010, are time-barred.

at 629 n.1), Erasmus's hostile work environment claim against Deutsche Bank under the NYSHRL must be dismissed for the same reasons it fails under Title VII.

The NYCHRL's standard for evaluating hostile work environment claims is more permissive, in that the offensive conduct need not be "severe or pervasive," but need only amount to "unwanted gender-based conduct." *Anderson v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38 (1st Dep't 2009); *Anderson v. Davis, Polk & Wardwell, LLP*, No. 10 Civ. 9338 (NRB), 2013 WL 1809443, at *2 (S.D.N.Y. Apr. 29, 2013).  Nonetheless, "the NYCHRL is not a 'general civility code,'" *Mihalik*, 715 F.3d at 110 (*quoting Williams*, 872 N.Y.S.2d at 40–41), and when "the conduct alleged is far from a borderline violation" of the NYSHRL, then the plaintiff has failed to state a claim under the NYCHRL, as well, *Woodard v. TWC Media Sols., Inc.*, No. 09 Civ. 3000 (BSJ), 2011 WL 70386, at *9 (S.D.N.Y. Jan. 4, 2011).

The Court has substantial doubts about whether the Co-worker's behavior, as alleged, would qualify as "unwanted gender-based conduct." *Anderson*, 872 N.Y.S.2d at 38.  But the Court need not reach that issue, because, even were that question resolved in Erasmus's favor, the Amended Complaint does not supply a basis to impute responsibility for any such conduct to Deutsche Bank.

Under the NYCHRL, "courts have applied a stricter standard [than under Title VII] with regard to the imputation of liability to an employer." *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 361 (S.D.N.Y. 2007) (collecting cases); *accord Rojas*, 783 F. Supp. 2d at 410.[14]  An employer may be liable for discriminatory behavior by an employee only where:

---

[14] The NYSHRL also applies a stricter standard, such that liability for an employee's discriminatory acts may not be imputed to an employer "unless the employer became a party to it by encouraging, condoning, or approving it." *Forrest v. Jewish Guild for the Blind et al.*, 3

> (1) the employee or agent exercised managerial or supervisory responsibility; or
> (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where the conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
> (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

N.Y. City Admin. Code § 8-107(13)(b).  Here, however, Erasmus has not alleged that the Co-worker exercised supervisory responsibility; that any supervisor was aware of the Co-worker's conduct while it was ongoing, so as to permit corrective action; or that Deutsche Bank should have been aware of it.  Erasmus's NYCHRL claim, therefore, also fails.

Finally, Erasmus fails to state claims that Deutsche Bank should be held liable as an aider and abettor under the NYSHRL and the NYCHRL for a hostile work environment created by the Co-worker.  The NYSHRL and the NYCHRL each provide for aider-abettor liability, making it unlawful "for any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under [the NYSHRL or the NYCHRL, respectively], or attempt to do so."  N.Y. Exec. Law § 296(6); N.Y. City Admin Code § 8-107(6).[15]  But because Erasmus falls short of alleging a hostile work environment under the NYSHRL, his aiding and abetting claim under that statute also necessarily fails.  *See Petrisch v. HSBC Bank USA, Inc.*, No. 07 Civ. 3303 (KAM), 2013 WL 1316712, at *21 (E.D.N.Y. Mar. 28, 2013) ("[A]iding and abetting is only a viable theory

---

N.Y.3d 295, 311 (2004) (quoting *Matter of State Div. of Human Rights v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 687 (1985)).  That standard is not met here, because Erasmus does not allege that Deutsche Bank encouraged, condoned, or approved the Co-worker's conduct, or that the conduct even continued after Erasmus first allegedly complained to Fehrman in July 2014.

[15] Aiding and abetting claims under the NYSHRL and the NYCHRL are analyzed under the same standard, "as language of the two laws is virtually identical."  *Schanfield v. Sojitz Corp. of America*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009) (internal quotation marks omitted).

where an underlying violation has taken place." (internal quotation marks and citation omitted)). As to the NYCHRL, because the Amended Complaint fails to allege that Deutsche Bank was aware or should have been aware of the Co-worker's conduct while it was occurring, Deutsche Bank cannot be held to have aided or abetted such conduct. The aiding and abetting claims against Deutsche Bank, therefore, are also dismissed.

### ii.    Fehrman

Erasmus also pursues hostile work environment claims against Fehrman under the NYSHRL and the NYCHRL, both directly and as an aider and abettor. *See* Am. Compl. ¶¶ 68–70–74, 78–80, 88–91. In the Second Circuit, for an individual employee to be so liable, the employee must have "actually participate[d]" in the conduct giving rise to the underlying discrimination claim. *Feingold v. New York*, 366 F.3d 138, 158–59 (2d Cir. 2004) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995)). In addition, under the NYSHRL, *direct* liability will not attach where the employee "is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Tomka*, 66 F.3d at 1317 (quoting *Patrowich v. Chem. Bank*, 63 N.Y.2d 541, 542 (1984)) (internal quotation marks omitted). By contrast, under the NYCHRL, direct liability for employees may attach "regardless of ownership or decision-making power." *Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 200 (E.D.N.Y. 2007) (citing *Murphy v. ERA United Realty*, 674 N.Y.S.2d 415, 417 (2d Dep't 1998)). Under both the NYSHRL and the NYCHRL, aiding and abetting liability may be found where the employee has no supervisory or decision-making function. *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012).

The Amended Complaint fails to state a hostile work environment claim against Fehrman under either the NYSHRL or the NYCHRL. Decisive under both laws, there is no allegation that

Fehrman participated in any harassing conduct or knew about any such conduct while it was ongoing.  And for the reasons stated above, Erasmus has failed to allege the requisite elements of a NYSHRL hostile work environment claim.  Accordingly, the claims against Fehrman are dismissed.

### C.    Discrimination Claims

The Amended Complaint, though it is far from clear, can be read to plead discrimination claims under the NYSHRL and NYCHRL, independent of any hostile work environment claims, against both Deutsche Bank and Fehrman.  *See* Am. Compl. ¶¶ 71–74, 88–91.  Title VII, which supplies the analytic framework for considering these claims, *see Cruz*, 202 F.3d at 565 n.1 ("Our consideration of claims brought under the state and city human rights laws parallels the analysis used in Title VII claims."), makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The NYSHRL and NYCHRL, using substantially similar language, each make it unlawful for an employer to discharge or discriminate against an individual because of a protected characteristic.  N.Y. Exec. Law § 296(1)(a); N.Y. City Admin. Code § 8-107(1)(a).

To establish a prima facie case of discrimination, a plaintiff must demonstrate that: (1) he was within a protected class, (2) he was qualified for the position, (3) he experienced an adverse employment action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.  *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (citing *Gorzynski*, 596 F.3d at 107); *see also Rojas*, 660 F.3d at 107 n.10 (same requirements under NYSHRL); *Cruz*, 202 F.3d at 565 (same requirements under NYCHRL).

The elements of a prima facie case "provide an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible." *Sommersett*, 2011 WL 2565301, at *5.

Here, Erasmus "fails 'to plead any facts that would create an inference that any adverse action taken by any defendant was based upon' [a] protected characteristic." *Humphries v. City Univ. of N.Y.*, No. 13 Civ. 2641 (PAE), 2013 WL 6196561, at *6 (S.D.N.Y. Nov. 26, 2013) (quoting *Patane*, 508 F.3d at 112). While the Amended Complaint alleges arguably adverse employment actions taken against Erasmus, it nowhere suggests that the defendants engaged in such actions *because of* Erasmus's membership in a protected class. Indeed, it nowhere indicates even what that protected class was. Thus, to the extent Erasmus intends to bring stand-alone discrimination claims against Deutsche Bank and Fehrman, these claims must be dismissed. *See Ben-Levy v. Bloomberg, L.P.*, 518 F. App'x 17, 20 (2d Cir. 2013) (summary order) (even the more permissive NYCHRL requires "some evidence from which discrimination can be inferred").

### D.     Retaliation Claims

#### 1.     Title VII

Erasmus brings a retaliation claim against Deutsche Bank under Title VII. *See* Am. Compl. ¶¶ 59–61. "To establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must present evidence that shows (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn v. City of New York*, 795 F.3d 297, 315–16 (2d Cir. 2015) (internal quotation marks and citations omitted).

The Amended Complaint appears to identify three instances of alleged retaliation against Erasmus: (1) Fehrman's mistreatment of Erasmus following the July 30, 2014 complaint, (2) placement of the Co-worker next to Erasmus in late November 2014, and (3) Erasmus's termination on December 17, 2014.  *See* Am. Compl. ¶¶ 38–41, 45, 48; *see also* Pl. Br. 16–17. For the reasons that follow, the Amended Complaint states a Title VII retaliation claim against Deutsche Bank, based on the latter two acts only.

### i.        Protected Activities and Defendants' Knowledge

Under Title VII, an employee engages in a protected activity when he "has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).  The Second Circuit has held that protected activities include "the filing of formal charges of discrimination," as well as "informal protests of discriminatory employment practices."  *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).  "[A]n employment practice need not actually violate Title VII for the protected activities element of a retaliation claim to be satisfied."  *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001).  "The plaintiff is only required to have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII."  *Id.*  However, not every complaint clears this threshold:  "A plaintiff's belief on this point is not reasonable simply because he or she complains of something that appears to be discrimination in some form." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013).

Erasmus implies that his July 30, 2014 complaint to Fehrman was a protected activity under Title VII.  *See* Pl. Br. 16.  However, as discussed above, on the facts pled, the Co-worker's conduct was unknown to Deutsche Bank before July 30, 2014.  Erasmus, therefore, cannot claim

19

that he was protesting an employment practice of Deutsche Bank's.  Indeed, based on the facts known to Erasmus at the time, any transgression was the Co-worker's alone.  There is thus no basis to infer that Erasmus, in complaining about the Co-worker's crude behavior, was opposing an employment practice made unlawful by Title VII.

Erasmus does adequately allege that he engaged in protected activity on August 5, 2014, when he filed a complaint with the EEOC.[16]  *See, e.g.*, *Meyers v. Medco Health Solutions, Inc.*, No. 09 Civ. 09216 (RKE), 2015 WL 1500217, at *12 (S.D.N.Y. Mar. 31, 2015) (filing claim with EEOC constitutes protected activity) (collecting cases).  Defendants thereafter participated in an EEOC mediation with Erasmus on November 12, 2014, Am. Compl. ¶ 43, which supplies a basis on which to infer that Deutsche Bank was aware of that filing.[17]

Further, the Court finds that the November 12 mediation itself qualifies as "an investigation, proceeding or hearing," and that Erasmus's participation therein thus constitutes a protected activity under Title VII.[18]  Deutsche Bank, as a participant in the mediation, was necessarily aware of this protected activity.

---

[16] Although Erasmus filed a second claim with the EEOC on December 2, 2014, he has not alleged that he received a right-to-sue letter in connection with that claim, so as to satisfy the requirement for administrative exhaustion.  Acts of retaliation made in response to Erasmus's second EEOC claim, as opposed to his first, are, therefore, not cognizable.

[17] In addition, Title VII requires the EEOC to serve notice on an employer (here, Deutsche Bank) within 10 days of the filing of a charge.  42 U.S.C. § 2000e-5(b).

[18] This accords with the finding of numerous federal courts that have considered the issue.  *See, e.g.*, *Filius v. Potter*, 176 F. App'x 8, 11–12 (11th Cir. 2006) (treating mediation as protected activity in reference to retaliatory action); *Kelley v. City of Albuquerque*, 542 F.3d 802, 813–17 (10th Cir. 2008) (defense attorney's participation in EEOC mediation is protected activity, under "plain language of § 2000e-3(a)"); *Sampson v. Sch. Dist. of Lancaster*, No. 05 Civ. 6414 (RBS), 2009 WL 1675083, at *6 (E.D. Pa. June 12, 2009) ("There is no dispute that Plaintiff's filing of the EEOC charge and subsequent mediation were protected activities."); *Collins v. Faurecia Interior Sys., Inc.*, 737 F. Supp. 2d 792, 804 (E.D. Mich. 2010); *Shears v. Mobile Cty. Revenue Comm'n*, No. 07 Civ. 491 (WSC), 2008 WL 4493234, at *8 (S.D. Ala. Oct. 3, 2008); *but see,*

### ii.    Adverse employment action

A plaintiff sustains an adverse employment action if he endures a "materially adverse change in the terms and conditions of employment."  *See Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks and citation omitted).  Employer actions "are 'materially adverse' if they are 'harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Burlington N.*, 548 U.S. at 57).  Actions "sufficiently disadvantageous" so as to constitute an adverse employment action "include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."  *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (internal quotation marks and citation omitted).

It is necessary to examine separately the three actions that Erasmus terms retaliatory to determine if they are sufficiently harmful to constitute adverse employment actions.

Deutsche Bank's conduct in the immediate wake of Erasmus's July 30, 2014 complaint (*i.e.*, the "impos[ition of] unattainable goals" on Erasmus, the "with[olding]" of Erasmus's "participation in department activities that impact his work assignments," and Fehrman's "ignoring" of Erasmus's "request for updates on assignments," *see* Am. Compl. ¶¶ 38–40) was not "sufficiently disadvantageous" to qualify.  Viewed separately or together, these actions fall short of changing the terms and conditions of Erasmus's employment, as it is not plausible that

---

*e.g.*, *Jones v. Alpha Rae Pers., Inc.*, 903 F. Supp. 2d 680, 686–87 (N.D. Ind. 2012) (treating EEOC mediation as a "non-protected activity"); *Matlock v. Douglas AutoTech Corp.*, No. 08 Civ. 17 (TBR), 2009 WL 3834098, at *14 (W.D. Ky. Nov. 13, 2009) (treating filing of EEOC charge, but not mediation, as protected activity).

they "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 57; *see Miksic v. TD Ameritrade Holding Corp.*, No. 12 Civ. 4446 (AJN), 2013 WL 1803956, at *4 (S.D.N.Y. Mar. 7, 2013) (allegation of workplace ostracism and isolation was not "sufficient to constitute an adverse action absent an accompanying demotion, reassignment, or loss of responsibility, salary, or fringe benefits" (internal quotation marks and citation omitted)); *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 352 (S.D.N.Y. 2006) ("change in job responsibilities" and "underutilization of [] Plaintiff's skills" not adverse employment actions unless "accompanied by materially adverse changes in employment, such as a demotion or a loss of wages"). These allegedly retaliatory acts are, further, conclusorily, rather than specifically, pled, and the Amended Complaint is notably silent as to when they occurred.

Erasmus's termination, by contrast, does qualify as a materially adverse employment action. Indeed, termination is the quintessential adverse employment action. *See R.H. Donnelley*, 368 F.3d at 128; *Feingold*, 366 F.3d at 152. And the placement of the Co-worker next to Erasmus's cubicle may also constitute such an action. While an intra-office reassignment does not ordinarily qualify as a material adverse action sufficient to sustain a retaliation claim, *see Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 699 (S.D.N.Y. 2011); *Cunningham v. N.Y. State Dep't of Labor*, No. 105 Civ. 1127 (DNH), 2010 WL 1781465, at *6 (N.D.N.Y. Apr. 30, 2010), there may be circumstances in which relocations rise to such a level, *see, e.g.*, *Pellei v. Int'l Planned Parenthood Fed'n*, No. 96 Civ. 7014 (WHP), 1999 WL 787753, at *12–13 (S.D.N.Y. Sept. 30, 1999) (plaintiff's relocation to a "small, poorly lit, isolated cubicle" was a sufficiently material adverse employment action to sustain retaliation claim); *compare McGrath v. Nev. Dep't of Pub. Safety*, No. 07 Civ. 00292 (LRH), 2008 WL 1924042, at

*2 (D. Nev. Apr. 30, 2008) (denying dismissal of retaliation claim where, despite plaintiff's complaints, defendant placed offending co-worker in same division as plaintiff), *with Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000) (dismissing retaliation claim at summary judgment where plaintiff had presented no evidence that employer knew plaintiff would be uncomfortable when scheduled together with hostile coworker).

Here, "[Erasmus's] allegations raise a reasonable inference that [defendants] placed [the Co-worker near Erasmus's cubicle] knowing that [Erasmus] would be uncomfortable." *McGrath*, 2008 WL 1924042, at *2. While the Court can conceive of legitimate non-retaliatory reasons for the Co-worker's relocation within the office, Erasmus has met his burden here. Under the circumstances alleged, the relocation next to an aggrieved worker of a noxious employee who had persistently peppered him with crude sexual innuendo—indeed, whose conduct had given rise to an EEOC complaint and mediation—would plausibly "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 57. At the motion to dismiss stage, therefore, the Court treats the placement of the Co-worker near Erasmus as an adverse employment action.

### iii.    Causation

Causation of an adverse employment action traceable to a protected activity may be established "either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Hicks*, 593 F.3d at 170

(citation omitted).  Other than in conclusory fashion,[19] Erasmus does not provide any non-temporal basis to infer that the two acts the Court has found to qualify as adverse employment actions were undertaken in retaliation for his protected activity.  Nor does the Amended Complaint recite evidence of retaliatory animus.  Any inference of causation, therefore, must derive from temporal proximity.

"Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action."  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010).  The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action."  *Gorman-Bakos v. Cornell Co-op. Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001).  However, "courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation."  *Flood v. UBS Global Asset Mgmt., Inc.*, No. 10 Civ. 374 (RJH), 2012 WL 288041, at *17 (S.D.N.Y. Feb. 1, 2012) (citing *Frisenda v. Inc. Vill. of Malverne*, 775 F. Supp. 2d 486, 512 (E.D.N.Y. 2011) (collecting cases)); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" (citation omitted)).

---

[19] *See* Am. Compl. ¶ 48 ("Defendants terminated [Erasmus] in retaliation for [Erasmus] engaging in protected activities.") (emphasis omitted).

Here, as pled, only approximately two weeks passed between Erasmus's November 12, 2014 EEOC mediation with Deutsche Bank and the placement of the Co-worker next to Erasmus in late November 2014, and just over one month passed between the mediation and Erasmus's December 17, 2014 termination.  *See* Am. Compl. ¶¶ 43, 45, 48.  As to both adverse acts, such short intervals support a causal inference of retaliation sufficient to survive a motion to dismiss. Deutsche Bank will, of course, be at liberty in discovery to adduce evidence that undermines this inference, much as Erasmus may adduce evidence supporting it.  But the close temporal proximity of these events clears the requisite pleading bar.  *See Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002) (prima facie retaliation case established where approximately one month had elapsed between protected activity and adverse employment action); *Flood*, 2012 WL 288041, at *18 (same, where one month and six weeks had elapsed, respectively, between protected activity and two adverse employment actions); *Memnon v. Clifford Chance US, LLP*, 667 F. Supp. 2d 334, 345 (S.D.N.Y. 2009) (same, where six weeks had elapsed).

The Amended Complaint therefore adequately pleads a Title VII retaliation claim based on the Co-worker's relocation and Erasmus's termination.  This claim, however, is narrowed to exclude any other alleged acts of retaliation.

### iv.  Administrative Exhaustion

Before bringing suit under Title VII, a plaintiff must exhaust administrative remedies. *See* 42 U.S.C. §§ 2000e-5(e)(l), (f)(1); *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000).  Administrative exhaustion is not a jurisdictional requirement, though it is a "precondition" of a Title VII claim.  *Francis*, 235 F.3d at 768.  To properly exhaust administrative remedies, a plaintiff must both file a charge with and receive a right-to-sue letter from the EEOC.  *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006) (citing

25

42 U.S.C. §§ 2000e-5(e)(l), (f)(1)).  "Claims not raised in an EEOC complaint, however, may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (citing *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superseded by statute on other grounds*, Civ. Rights Act of 1991, Pub. L. No. 102-166, § 101, 105 Stat. 1071, 1071–72). Although a defendant bears the burden of demonstrating a failure to exhaust administrative remedies, *Kane v. St. Raymond's Roman Catholic Church*, No. 14 Civ. 7028 (AJN), 2015 WL 4270757, at *5 (S.D.N.Y. July 13, 2015), "[a] plaintiff's failure to exhaust administrative remedies . . . may be raised on a motion to dismiss . . . if the failure to exhaust is clear from the face of the complaint."  *Petyan v. N.Y.C. Law Dep't*, No. 14 Civ. 1434 (GBD) (JLC), 2015 WL 1855961, at *2 n.4 (S.D.N.Y. Apr. 23, 2015), *report and recommendation adopted*, 2015 WL 4104841 (S.D.N.Y. July 2, 2015).

The Amended Complaint alleges that Erasmus filed an EEOC complaint on August 5, 2014, and received a right-to-sue letter on November 27, 2014.  Am. Compl. ¶¶ 4, 7.  Despite these pleadings, defendants argue that Erasmus necessarily failed to exhaust administrative remedies for his retaliation claims because the two cognizable retaliatory acts occurred in late November and early December, after Erasmus (on August 5, 2014) filed his first EEOC complaint.  Def. Br. 17.[20]

---

[20] As noted *supra*, the Amended Complaint alleges that, on December 2, 2014, Erasmus filed a second EEOC complaint.  Am. Compl. ¶ 5.  However, the Amended Complaint does not indicate the charges in Erasmus's second EEOC complaint or whether the EEOC issued him a right-to-sue letter in connection therewith.  Nor have the parties attached that complaint to their filings here.  The Court must therefore disregard the second EEOC complaint as a potential basis for finding administrative exhaustion.

However, the law does not rigidly require that the EEOC complaint postdate alleged Title VII violations.  "Subsequent conduct is reasonably related to conduct in an EEOC charge if: (1) the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; (2) it alleges retaliation for filing the EEOC charge; or (3) the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."  *Alfano*, 294 F.3d at 381 (internal quotation marks and citations omitted). Claims based on subsequent conduct may still be brought where all allegedly retaliatory actions have taken place after the full close of EEOC proceedings.  *See, e.g.*, *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686–87 (2d Cir. 2001) (denying dismissal of retaliation claim where retaliatory act had occurred subsequent to EEOC issuance of relevant right-to-sue letter); *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1208–09 (2d Cir. 1993) (upholding retaliation verdict for plaintiff where retaliatory act had occurred subsequent to termination of administrative proceedings); *Lincoln v. Potter*, 418 F. Supp. 2d 453, 456–57 (S.D.N.Y. 2006) (allowing plaintiff to amend complaint to assert claim alleging retaliation in response to concluded administrative proceedings).  Indeed, retaliation claims not included in EEOC filings frequently proceed even where, as here, defendants may not be liable for the underlying discriminatory conduct alleged in those filings.  *See, e.g.*, *Malarkey*, 983 F.2d at 1208–09 (upholding verdict for plaintiff on retaliation claim where plaintiff had not prevailed on claims made in EEOC filing itself); *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 472–82 (S.D.N.Y. 2011) (at summary judgment, denying dismissal of retaliation claim not in EEOC filing where all other claims were dismissed); *Lincoln*, 418 F. Supp. at 453, 456–57 (dismissing age discrimination claim at summary judgment, but allowing plaintiff to amend complaint to assert retaliation claim that was not included in EEOC filing).

The "reasonable relation" principle carries the day for Erasmus here, where the Amended Complaint "alleges retaliation for filing the EEOC charge." *Alfano*, 294 F.3d at 381. As pled, there is a reasonable relationship, and indeed a close connection, between the cognizable retaliatory acts—the Co-worker's relocation and Erasmus's termination—and the EEOC proceedings. Notably, the EEOC complaint protested the Co-worker's conduct, and Deutsche Bank's first act of alleged retaliation was to relocate the Co-worker to be in Erasmus's close proximity. This relationship allows Erasmus's retaliation claim to proceed, even if the EEOC proceedings concluded prior to the relocation or termination,[21] and even if Erasmus's action may proceed on no other bases. Dismissal is therefore not warranted on exhaustion grounds.

## 2. NYSHRL and NYCHRL

### i. Deutsche Bank

Because the Amended Complaint adequately pleads a retaliation claim against Deutsche Bank under Title VII, it necessarily states a claim for retaliation under the NYSHRL and the more liberally construed NYCHRL.[22] *See Caban v. Richline*, No. 10 Civ. 559 (ALC), 2012 WL 2861377, at *14 (S.D.N.Y. July 10, 2012) ("Courts apply the same standard used in Title VII cases in analyzing NY[S]HRL retaliation claims.") (citing *Patane*, 508 F.3d at 115–17); *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010) ("New York State

---

[21] It is unclear whether the Co-worker's relocation, which occurred in "late November" of 2014, *see* Am. Compl. ¶ 45 (emphasis omitted), predated or postdated the November 24, 2014 issuance of the right-to-sue letter.

[22] Because, on the pleadings, Deutsche Bank can be held directly liable for the alleged retaliatory conduct, the Court need not address whether Deutsche Bank could alternatively be found liable under an aider-abettor theory.

courts and district courts in this Circuit have concluded . . . that the retaliation inquiry under the [NY]CHRL is 'broader' than its federal counterpart.") (collecting cases).

To be clear, however, even under the NYCHRL, Erasmus's retaliation claim must be narrowed to mirror the scope permitted under Title VII—in other words, to allege retaliation only in the form of the Co-worker's relocation and Erasmus's termination.  That is because the elements of retaliation under the NYCHRL "differ [from those under Title VII] only in that the plaintiff need not prove any adverse employment action; instead, he must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 446 (S.D.N.Y. 2011) (quoting *Gutierrez v. City of New York*, 756 F. Supp. 2d 491, 509 n.12 (S.D.N.Y. 2010)) (internal quotation marks omitted).  The other ostensibly retaliatory actions pled by Erasmus—Fehrman's unattainable goal-setting for Erasmus, withholding of Erasmus's participation in department activities, and disregard of Erasmus' assignment update queries, *see* Am. Compl. ¶¶ 38–41—are too conclusory, vague, and threadbare to survive dismissal.  The Court cannot infer, other than by speculation, that this conduct was "reasonably likely to deter a person from engaging in protected activity."  *Mayers*, 796 F. Supp. 2d at 446.

### ii.   Fehrman

Erasmus also pursues retaliation claims against Fehrman individually under the NYSHRL and the NYCHRL, both directly and as an aider and abettor.  *See* Am. Compl. ¶¶ 65–70, 75–80. These claims are clearly viable, given the foregoing analysis, because, as alleged in the Amended Complaint, Fehrman participated in both placing the Co-worker next to Erasmus and terminating Erasmus.  *See* Am. Compl. ¶¶ 45, 48.  Fehrman is also alleged to have received Erasmus's original complaint about the Co-worker, to have participated in the EEOC mediation, and to have

29

been informed (two days before Erasmus's termination) of Erasmus's claim to have mounted an investigation of the defendants. *Id.* ¶¶ 37, 43, 47. These allegations permit an inference that Fehrman was involved in, if not the driving force behind, the adverse employment actions the Court has found cognizable.[23]

The Court accordingly denies Fehrman's motion to dismiss the NYSHRL and NYCHRL claims of retaliation against him, save that these claims are narrowed in the same manner as those against Deutsche Bank.

### E.   Rights-Interference Claim

Finally, the Amended Complaint alleges that defendants violated N.Y. City Admin. Code § 8-107(19), a NYCHRL provision making it unlawful "for any person to coerce, intimidate, threaten or interfere with . . . any person in the exercise or enjoyment of . . . any right granted or protected pursuant to [§ 8-107]." Am. Compl. ¶¶ 86–87. A plaintiff is required to allege threats as an element of such a claim. *See, e.g.*, *Poolt v. Brooks*, 967 N.Y.S.2d 869, 2013 WL 323253, at *16 (Sup. Ct. N.Y. County 2013) ("[T]his cause of action must be dismissed . . . for plaintiff does not allege that anyone threatened her."); *cf. Guan N. v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 4299 (AJN), 2013 WL 3819609, at *7 (S.D.N.Y. July 23, 2013) (allowing plaintiff to bring § 8-

---

[23] At the very least, the pleadings support a finding of direct liability under the NYCHRL, and aider-abettor liability under the NYSHRL. Because Fehrman's involvement in Erasmus's termination suggests some degree of decision-making authority with respect to personnel, the Court, at the motion to dismiss stage, holds that Fehrman may be held directly liable for retaliation under the NYSHRL, as well. *See Tomka*, 66 F.3d at 1317 (individual cannot be held directly liable under the NYSHRL unless he is "shown to have any ownership interest or any power to do more than carry out personnel decisions made by others").

107(19) claim where she adequately alleged that defendant took "threatening actions against her").

Dismissal is warranted where a plaintiff has pled no facts "tending to support such a claim." *Gallo v. Alitalia-Linee Aeree Italiane-Societa per Azioni*, 585 F. Supp. 2d 520, 548 (S.D.N.Y. 2008). Such is the case here. The Amended Complaint simply does not allege that Deutsche Bank personnel coerced, intimidated, threatened, or otherwise interfered with Erasmus in the exercise or enjoyment of any right under § 8-107, or even attempted to do so. The rights-interference claim is therefore dismissed.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss all claims in the Amended Complaint, save the retaliation claims. Erasmus's retaliation claims against Deutsche Bank under Title VII, the NYSHRL, and the NYCHRL, and against Fehrman under the NYSHRL and the NYCHRL, may go forward, as narrowed by this decision.

The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 6 and 17.

The case will now proceed to discovery. By December 7, 2015, the parties shall jointly submit a proposed case management plan, consistent with the Court's Individual Rule 2(B), *see* http://www.nysd.uscourts.gov/judge/Engelmayer, contemplating the close of fact discovery by April 1, 2016. A next conference in the case will be held on May 2, 2016, at 11:00 a.m., which will function as a pre-motion conference in the event that either party has submitted a letter indicating an intention to move for summary judgment, *see* Individual Rule 3(H), and which otherwise will be used to set a trial date and deadlines for the filing of pre-trial submissions.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: November 30, 2015
       New York, New York